UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RALIK BAILEY,

                                        Plaintiff,

v.

CORRECTION OFFICER J. WECKESSER,
Five Points C.F.; CORRECTION OFFICER        Case # 18-cv-06292-FPG
T. HODKINSON, Five Points C.F.; DEPUTY
SUPR. of SEC. R. C. CONENY, Five Points      DECISION AND ORDER
C.F.; DIRECTOR D. VENETTOZZI,
Director of Special Housing/Inmate
Disciplinary Program, N.Y.S. Department of
Corrections and Community Supervision,

                                        Defendants.

## INTRODUCTION

Ralik Bailey ("Bailey" or "Plaintiff") is an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"), currently confined at Marcy

Correctional Facility. Acting *pro se*, Bailey commenced the instant action pursuant to 42 U.S.C. §

1983 ("Section 1983") by filing a Complaint (ECF No. 1) on April 6, 2018, alleging constitutional

violations based on events that occurred while he was housed at Five Points Correctional Facility

("Five Points"). Defendants have moved for partial summary judgment in lieu of an answer (ECF

No. 16), arguing that Bailey has failed to exhaust his administrative remedies with respect to the

claims raised against Correction Officer J. Weckesser ("CO Weckesser") and Correction Officer

T. Hodkinson ("CO Hodkinson"). For the reasons set forth below, Defendants' Motion is

GRANTED IN PART and DENIED IN PART.

# BACKGROUND

As relevant to the instant partial summary judgment motion, the Complaint alleges that on April 15, 2015, CO Weckesser filed a false misbehavior report against Bailey in retaliation for filing grievances. *See* Complaint ("Compl."), ECF No. 1 ¶¶ 14-20. That day, Bailey and his cellmate were ordered out of their cell by CO Hodkinson and another correction officer who is not a defendant for a cell search. About ten minutes into the search, CO Weckesser came over and "accosted" Bailey about the grievances he filed. When Bailey did not respond, CO Weckesser became irate and threatened to have Bailey "set-up." *Id.*

CO Hodkinson said to CO Weckesser, "Here's the grievance this [expletive] wrote on you right here,"[1] and "here's some [expletive] with Sergeant Haff's name on it." *Id.* ¶ 16. Bailey requested the presence of the area supervisor to which CO Weckesser responded, "You want to write [expletive] and see the Sergeant? I'll show you how to write and you can see the Sergeant from the box." *Id.* ¶ 17. CO Weckesser then handcuffed Bailey and brought him to the Special Housing Unit ("SHU"). *Id.* ¶ 18.

On April 16, 2015, Bailey was served with a misbehavior report ("MBR") in which CO Weckesser charged him with several disciplinary rule violations (102.10 Threats, 106.10 Direct Order, 104.13 Creating a Disturbance, 107.10 Interference, and 107.11 Verbal Harassment). *Id.* ¶¶ 19, 22.

The same day, April 16, 2015, Bailey filed an Inmate Grievance Complaint asserting that he

> has been being harassed by C.O. J. Weckesser from which [he] filed grievances 'FPT-30058-15' and another 'dated 3-19-15'. However, this officer continues to harass [him] and has now went [sic] as far as to falsify a misbehavior report on [him], claiming [he] threatened [Weckesser] amongst other things on 4-15-15.

---

[1] The grievance referenced in this comment was one Bailey filed on March 19, 2015, which also was against CO Weckesser. *See* Compl. ¶ 13. This grievance is not at issue on this motion, however.

Inmate Grievance Complaint dated 4/16/15 ("Weckesser Grievance"), Declaration of Hillel Deutsch, ECF No. 16-4 ("Deutsch Decl."), Ex. A at 7.[2]

Bailey filed an Inmate Grievance Complaint on April 22, 2015, against CO Visnesky, who is not a defendant in this action. *See* Inmate Grievance Complaint dated 4/22/15 ("Visnesky Grievance"), Deutsch Decl., Ex. A at 5-6. This grievance was consolidated with the April 16, 2015 grievance under Grievance No. FPT-30196-15. *See* Deutsch Decl. ¶ 5; Declaration of Rachael Seguin, ECF No. 16-3 ("Seguin Decl.") ¶¶ 2-3. Following an investigation, which Bailey claims did not actually happen, the Superintendent of Five Points denied Grievance No. FPT-30196-15. *See* Case History and Record, Deutsch Decl., Ex. A at 4; Superintendent Response, *id.* at 8. The Central Office Review Committee ("CORC") denied Bailey's appeal of the Superintendent's Response. *See* CORC Decision, *id.* at 1.

Defendants[3] filed their Motion for Summary Judgment on July 2, 2019 (ECF No. 16), along with a Statement of Undisputed Facts (ECF No. 16-1), Local Rule 56.2 Statement with Exhibit A (ECF No. 16-2), Seguin Decl. (ECF No. 16-3), Deutsch Decl. with Exhibit A (ECF No. 16-4), and Memorandum of Law ("Defts.' Mem.") (ECF No. 16-5). Bailey filed two Motions for Extension of Time to File Response/Reply (ECF Nos. 18 & 20). The Court (Telesca, D.J.) granted both requests. *See* ECF Nos. 19 & 21. However, Bailey never filed a response or reply, despite being warned that his failure to do so may result in dismissal of this action in whole or in part. The case was transferred to the undersigned on March 10, 2010. *See* ECF No. 25.

---

[2] Exhibit A to the Deutsch Declaration is not numbered, and CM/ECF did not assign page numbers when it was filed. The Court has assigned page numbers beginning with the first page after the page that has "Exhibit A" on it.

[3] The affidavit of service for CO Weckesser was returned as unexecuted. ECF No. 17.

**DISCUSSION**

## I.     Legal Principles Applicable to Summary Judgment Motions

Rule 56(a) of the Federal Rules of Civil Procedure states that "the court shall grant summary judgment" if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Celotex Corp.*, 477 U.S. at 323), "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986) (emphases in original). "Only disputes over facts that might affect the outcome of the suit under the governing law" are "material." *Id.* at 248. A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Rule 56(b) provides that a party may file a motion for summary judgment "*at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b) (emphasis supplied). "Hence, an answer is not a prerequisite to the consideration of a motion for summary judgment." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 440 (5th Cir. 2003) (interpreting former Rule 56(a) which stated that a

summary judgment may be made "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment").

In general, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). Nevertheless, the Second Circuit has found no error in granting summary judgment prior to discovery where the plaintiff failed to file an affidavit setting forth the essential facts he or she sought to discover. *Id.* (citing former Fed. R. Civ. P. 56(f), now Fed. R. Civ. P. 56(d)). In addition, district courts in this Circuit have routinely granted motions for summary judgment where "the facts regarding [a prisoner's] efforts at exhaustion [of administrative remedies] are not disputed, and it does not appear that any amount of discovery would change the outcome of" the motion. *Parra v. Wright*, No. 11-CV-6270 CJS, 2013 WL 6669235, at *7 (W.D.N.Y. Dec. 18, 2013); *accord, e.g.*, *Allah v. Ryan*, No. 14-CV-6029L, -- F. Supp.3d --, 2020 WL 476675, at *3 (W.D.N.Y. Jan. 30, 2020); *Omaro v. Annucci*, 68 F. Supp. 3d 359, 362 (W.D.N.Y. 2014) ("An inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment made in lieu of an answer.") (citation omitted).

## II.     Defendants' Motion for Partial Summary Judgment

### A.     Overview

Defendants argue that Bailey did not properly exhaust his claim of retaliation against CO Weckesser because the grievance he filed concerning the incident on April 15, 2015 did not include any allegations of retaliation but instead grieved only a claim of harassment. Defendants also contend that Bailey failed to exhaust his claim of retaliation against CO Hodkinson because the grievance he filed concerning the April 15, 2015 incident did not mention CO Hodkinson at all. Therefore, Defendants argue, the First Amendment retaliation claims against CO Weckesser and

CO Hodkinson should be dismissed based on Bailey's failure to exhaust administrative remedies. Bailey did not respond to Defendants' exhaustion argument. Nor did he seek the Court's assistance in obtaining discovery via Rule 56(d). The Court, having reviewed the record, finds that there are no genuine issues of material fact regarding exhaustion. Accordingly, the question before the Court is simply whether Defendants are "entitled to a judgment as a matter of law" based on the undisputed facts. *See* Fed. R. Civ. P. 56(a).

**B.     Applicable Legal Principles**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prior to commencing litigation, a prisoner must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The PLRA's exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Dismissal [for failure to exhaust] is without prejudice[.]" *Kasiem v. Switz*, 756 F. Supp. 2d 570, 575 (S.D.N.Y. 2010) (citing *Brown v. Napoli*, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009); *Chisholm v. New York City Dep't of Corr.*, No. 08 Civ. 8795(SAS), 2009 WL 2033085, at *3 (S.D.N.Y. July 13, 2009)).

"The exhaustion inquiry . . . requires that [the Court] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007) (other citation omitted). In New York, compliance with the exhaustion requirement means that state prisoners generally must complete all three steps of the grievance

and appeal procedure outlined in the Inmate Grievance Program, codified at N.Y. Comp. Codes R. & Regs., tit. 7, § 701.1 *et seq.*, most recently amended effective July 1, 2006. *See, e.g.*, *Collins v. Goord*, 438 F. Supp.2d 399, 410-11 (S.D.N.Y. 2006) ("As a general matter, only after pursuing all three steps has an inmate 'exhausted' his claim.") (citing *Woodford v. Ngo*, 126 S. Ct. 2378, 2387-89 (2006) (holding that PLRA requires inmates to "properly" exhaust administrative remedies before filing suit in federal court)).

First, the inmate files a complaint with the facility clerk, which is then reviewed by the IGRC. *See* N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5(a), (b). Second, the inmate may appeal an adverse decision by the IGRC to the facility superintendent. *Id.* § 701.5(c). Third, the inmate may appeal the superintendent's decision to the CORC. *Id.* § 701.5(d). "'Like grievances' may be consolidated at the option of the IGP supervisor or IGRC and assigned one grievance calendar number." *Id.* § 701.5(a)(3).

"Consistent with PLRA objectives, [the Second Circuit] ha[s] held that 'inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.'" *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)). Drawing "an analogy between the contents of an administrative grievance and notice pleading," *id.*, the Second Circuit has stated that "the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.* (quoting *Johnson*, 380 F.3d at 697 and *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)) (internal quotation marks omitted). *Pro se* inmates are afforded "a liberal grievance pleading standard," but "the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." *Id.* (citing *Johnson*, 380 F.3d at 697).

### C. The Claim Against CO Weckesser Is Exhausted

The Weckesser Grievance and the Visnesky Grievance were consolidated as "like grievances" into Grievance FPT-30196-15. *See* Email from Chris VanBergen dated 6/19/15 (stating that "[t]his case has two 'like' grievances in it, one on CO Wecknesser [sic] and the other on CO Visnesky"), Deutsch Decl., Ex. A at 23-24. Defendants do not dispute that Bailey pursued Grievance FPT-30196-15 through all three levels of administrative review available to him. *See* Case History and Record, Deutsch Decl., Ex. A at 4.

Defendants reason that because the Weckesser Grievance "makes no reference to any statement by [CO] Weckesser" about a retaliatory motive, and it does not "accuse" CO Weckesser of "'accosting' him over grievances," Bailey did not sufficiently put prison officials on notice that he was asserting a retaliation claim against CO Weckesser. Defs.' Mem. at 5. Defendants characterize the Weckesser Grievance as simply alleging that the false misbehavior report was part of a pattern of harassment. *Id.* In addition, Defendants assert, the Weckesser Grievance was not viewed by the investigating officials as alleging a retaliation claim; nor was it investigated as such. *Id.* (citing Seguin Decl. ¶ 5). The Court finds Defendants' argument unavailing.

As an initial matter, the Second Circuit has clearly stated that an inmate's grievance "need not lay out the facts, articulate legal theories, or demand particular relief[,]" *Johnson*, 380 F.3d at 697, to comply with the exhaustion requirement. Defendants cite no legal authority for their assertion that Bailey's grievance was deficient because it did not attribute to CO Weckesser a specific statement articulating a retaliatory motive. Indeed, "direct evidence of retaliatory motive. . . is 'rarely available' in cases alleging unlawful retaliation," *Allah v. Poole*, 506 F. Supp. 2d 174, 185 (W.D.N.Y. 2007) (quoting *Meyer v. Bd. of Cnty. Comm'rs of Harper Cnty., Okla.*, 482 F.3d

1232, 1244 (10th Cir. 2007) (internal citations omitted), and "is not necessarily required[.]" *Id.* (citing *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003)).

Defendants' contention that the Weckesser Grievance and the Visnesky Grievance (which they concede exhausted a retaliation claim) are entirely dissimilar is belied by the fact that the Inmate Grievance Program Supervisor treated them as "like grievances" and consolidated them into one. Like the Weckesser Grievance, the Visnesky Grievance does not mention the words retaliation or retaliatory. Instead, it states that CO Visnesky "made mention of [his] filing of grievances on officers and threaten[ed] [his] physical well-being." Visnesky Grievance, Deutsch Decl., Ex. A at. 5.

The Weckesser Grievance states that Bailey

has been being harassed by C.O. J. Weckesser from which [he] filed grievances 'FPT-30058-15' and another 'dated 3-19-15'. However, this officer continues to harass [him] and has now went [sic] as far as to falsify a misbehavior report on [him], claiming [he] threatened [Weckesser] amongst other things on 4-15-15.

Fairly read, this grievance suggests that as a result of Bailey filing grievances against CO Weckesser about harassment, CO Weckesser escalated his harassing behavior by filing a false misbehavior report against Bailey. The grievance thus implies a causal connection between Bailey's filing of grievances against CO Weckesser—a constitutionally protected activity—and the officer's filing of a false misbehavior report against Bailey—an adverse action.[4] Accordingly, the description in the Weckesser Grievance "provide[d] enough information about the conduct of which [he] complain[s] to allow prison officials to take appropriate responsive measures[,]" *Johnson*, 380 F.3d at 697; *see Varela v. Demmon*, 491 F. Supp. 2d 442, 448 (S.D.N.Y. 2007) ("With respect to the assault, Varela's grievance does not use the word 'retaliation' in describing

---

[4] *See generally Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (stating that a prisoner asserting a retaliation claim must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action") (citation omitted).

what occurred. But, fairly read, it does suggest that the assault occurred in response to Varela's prior complaint to Demmon's supervisors. The grievance states that Demmon said, on the day before the assault: 'Since you like to cry to my superiors, I'm going to show you who the real boss around here is. Your time will come soon.' The grievance then details the assault. This description obviously suggests that Demmon instigated the assault in response to Varela's complaints.") (internal and other citations omitted).

In that regard, the Court notes that there is nothing in the documents Defendants submitted to substantiate their insistence that the Visnesky Grievance was investigated differently from the Weckesser Grievance because the former alleged retaliation. The investigation into both grievances essentially consisted of obtaining a statement from the correction officer involved. The Case History and Record summarizing the investigation into the consolidated grievances and what happened at each level of administrative review does not mention the words retaliation or retaliatory. *See* Case History and Record, Deutsch Decl., Ex. A. at 4.

For the foregoing reasons, the Court finds that the Weckesser Grievance satisfied the exhaustion requirement as to the retaliation claim against CO Weckesser. The Court will deny Defendants' motion for summary judgment on the retaliation claim against CO Weckesser.

**D.      The Claim Against CO Hodkinson Is Unexhausted**

The Court turns next to the question of whether the Weckesser Grievance exhausted a retaliation claim against CO Hodkinson. Defendants argue that because the grievance "failed to mention Officer Hodkinson at all," the retaliation claim against him is unexhausted. Defts.' Mem. at 6. The Supreme Court has held that "nothing in the [PLRA] imposes a 'name all defendants' requirement. . . ." *Jones*, 549 U.S. at 217. Instead, the Court must look to the grievance procedure promulgated by the state in question. *See id.* at 218 ("Compliance with prison grievance procedures

. . . is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As [Michigan]'s procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." (quoting another source)).   Thus, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219.

"Like the prison grievance policy reviewed in *Jones v. Bock*, New York's 'procedures make no mention of naming particular officials . . . [as] a prerequisite to proper exhaustion.'" *Varela*, 491 F. Supp. 2d at 449 (quoting *Jones*, 549 U.S. at 218). "All that is necessary is that the grievance contain a 'concise, specific description of the problem.'" *Id.* (quoting N.Y. Comp. Codes R. & Regs., tit. 7, § 701.5(a)(2)). In *Varela*, the prison officials argued that the plaintiff had not exhausted his claim against the three officers alleged to have committed an assault because their names were not contained in the grievance.  The grievance described the assault but did not name the officers, instead referring only to "[t]he officers escorting [Varela]" and "an officer which was posted on building 2 gate." *Id.* (quotation to record omitted). Noting that the prison officials did not dispute that the officers were in fact the guards "escorting [the plaintiff]" and the guard at "building 2 gate," the district court found that Varela's grievance complied with New York's exhaustion procedure and denied the defendants' motion for summary judgment. *Id.*

Here, in contrast, the Weckesser Grievance does not hint at the fact that more than one correction officer was involved in the April 15, 2015 incident. It therefore did not "provide enough information . . . to allow prison officials to take appropriate responsive measures[,]" *Johnson*, 380 F.3d at 697, such as interviewing CO Hodkinson. Accordingly, the Court finds that the Weckesser

Grievance did not sufficiently exhaust a retaliation claim against CO Hodkinson. The Court will grant Defendants' motion for summary judgment dismissing the retaliation claim against CO Hodkinson. Because CO Hodkinson was only named in connection with the retaliation claim, the Court will dismiss him as a defendant from this case.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 16) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED to the extent that the retaliation claim against CO Hodkinson is DISMISSED WITHOUT PREJUDICE for failure to exhaust. CO Hodkinson is therefore terminated as a defendant in this action. The Clerk of Court is directed to modify the caption to remove CO Hodkinson as a defendant. The Motion is DENIED as to the retaliation claim against CO Weckesser, which may proceed.

IT IS SO ORDERED.

Dated: March 23, 2020
      Rochester, New York

                                                 _____
                                               HON. FRANK P. GERACI, JR.
                                               Chief Judge
                                               United States District Court