UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RALIK BAILEY,

                              Plaintiff,

                              Case # 18-CV-6292-FPG

v.

                              DECISION AND ORDER

CORRECTION OFFICER J. WECKESSER, et al.,

                              Defendants.

## INTRODUCTION

Plaintiff Ralik Bailey brings this prisoner civil rights action against Defendants Correction Officer J. Weckesser, Deputy Superintendent of Security R. Coveny, and Director D. Venettozzi.[1] He contends that Weckesser filed a false misbehavior report against him, which led to a constitutionally inadequate hearing before Coveny, resulting in his wrongful confinement in a special housing unit ("SHU") for 57 days. *See generally* ECF No. 1. Currently before the Court is Defendants' partial motion for summary judgment as to the due-process claim against Coveny and Venettozzi. ECF No. 45. For the reasons that follow, Defendants' motion is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding

---

[1] The Court dismissed a fourth defendant, Correction Officer T. Hodkinson, from the suit in its March 23, 2020 Decision & Order. ECF No. 26.

1

whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotation omitted).

## BACKGROUND

The Court begins by summarizing Bailey's allegations from his complaint.[2] At the time the relevant events began, Bailey was an inmate at Five Points Correctional Facility ("Five Points"). ECF No. 1 ¶ 6. In March 2015, Bailey filed two grievances against Weckesser—a correctional officer at Five Points—alleging that Weckesser had engaged in various misdeeds. On April 15, 2015, Bailey's cell was searched by two other correctional officers. Bailey alleges that, during the search, Weckesser entered his cell, "accosted" him about the grievances, ordered him out of his cell, and "escorted" him to SHU. ECF No. 1 ¶¶ 15, 18. Bailey claims that Weckesser then filed a false misbehavior report against him. *Id.* ¶ 19.

Bailey was served with notice of the misbehavior report and charges, and he was given an opportunity to defend himself at a "Tier III hearing."[3] ECF No. 1 ¶ 23. Bailey alleges that the hearing was defective in several respects: he was not given a sufficient opportunity to proffer exculpatory evidence; he did not receive help from his designated employee-assistant; Coveny (the presiding hearing officer) pressured him to plead guilty before the hearing; Coveny interrupted

---

[2] The Court may consider the allegations in Bailey's complaint as evidence because he signed the complaint under penalty of perjury. *See* ECF No. 1 at 12; *see also Brandon v. Kinter*, 938 F.3d 21, 26 n.5 (2d Cir. 2019).

[3] New York's prison system "conducts three types of inmate disciplinary hearings. . . . Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of 'good time' credits." *Brooks v. Prack*, 77 F. Supp. 3d 301, 306 n.1 (W.D.N.Y. 2014).

him when he attempted to speak or defend himself; Coveny removed Bailey from the hearing on the contrived basis that Bailey had "create[ed] a disturbance" at the hearing; and the hearing was conducted in Bailey's absence. *Id.* ¶¶ 31, 32, 38, 39, 40. Bailey claims that both Weckesser and Hodkinson gave false testimony during the hearing. *Id.* ¶ 41.

After the hearing, Coveny found Bailey guilty of nearly all of the charges. ECF No. 1 ¶ 42. Bailey received a penalty of 180 days in SHU, 180 days of no privileges, and a recommended 90-day loss of good time credits. Bailey was moved to Southport Correctional Facility on May 17, 2015 to carry out his SHU confinement. *Id.* at 9. On administrative appeal, Venettozzi modified the sentence to 90 days in SHU, 90 days of no privileges, and a recommended 90-day loss of good time credits. Bailey filed an Article 78 action in state court to challenge the determination. Before that action was resolved, Venettozzi administratively reversed the findings of guilty, and the Article 78 action was dismissed as moot. *Id.* ¶ 45; *see also Bailey v. Annucci*, 45 N.Y.S.3d 815 (3d Dep't 2017). Bailey was released from SHU on July 13, 2015—57 days later.

In April 2018, Bailey filed the present action. ECF No. 1. District Judge Michael A. Telesca screened the complaint and construed it to raise two claims under 42 U.S.C. § 1983: (1) a First/Fourteenth Amendment retaliation claim against Weckesser and Hodkinson,[4] and (2) a procedural due process claim against Coveny and Venettozzi. *See* ECF No. 10 at 7-10.

## DISCUSSION

In support of summary judgment, Defendants argue, among other things, that the due process claim fails because Bailey has not established a liberty interest giving rise to due process

---

[4] It is unclear whether Judge Telesca also read Bailey's complaint to raise a due process claim against Weckesser. *See* ECF No. 10 at 8. Even if the complaint could be so construed, that claim would be dismissed on the same basis discussed herein.

3

protection. ECF No. 45-5 at 17-19. Because the Court agrees, it need not address Defendants' other arguments.

An inmate has "no due process claim under the Fourteenth Amendment" if he cannot establish "that he had a protected liberty interest in being free from the punishment that was imposed upon him as a result of [a disciplinary] hearing." *Scott v. Albury*, 156 F.3d 283, 286 (2d Cir. 1998) (per curiam). "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation marks and brackets omitted). "Factors relevant to determining whether the plaintiff endured an atypical and significant hardship include the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Id.* (internal quotation marks omitted). "Disputes about conditions may not be resolved on summary judgment, but where the conditions are undisputed," the issue "should be resolved by the court as a matter of law." *Id.* (internal citation omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999) ("The . . . standard of 'atypical and significant hardship' is an issue of law.").

Although the Second Circuit has avoided "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," as a general matter, "SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions [are] *more severe*" than what the Second Circuit calls "normal SHU conditions." *Palmer*, 364 F.3d at 65 (emphasis added). Thus, at 57 days of confinement, Bailey must submit "proof of conditions more onerous than usual" to support a due process claim. *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009) ("[R]estrictive confinements of less than 101 days do not

4

generally raise a liberty interest warranting due process protection" and "require proof of conditions more onerous than usual."); *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) ("We have said that under abnormal or unusual SHU conditions, periods of confinement of less than 101 days may implicate a liberty interest."). "Under the 'normal conditions of SHU confinement in New York,'" an inmate is:

> placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited.

*Palmer*, 364 F.3d at 65 n.3.

Here, Bailey has not presented sufficient evidence that his SHU conditions so deviated from the norm as to constitute atypical and significant hardship. Indeed, most of the conditions he identifies are the normal restrictions attendant to SHU, which, by definition, are not "abnormal or unusual SHU conditions." *Ortiz*, 380 F.3d at 654. For example, Bailey alleged that he was confined to his single-occupancy cell for 23 hours each day, in accordance with applicable agency regulations. *See Palmer*, 364 F.3d at 65 n.3; 7 N.Y.C.R.R. § 304.3. He received two showers per week, 7 N.Y.C.R.R. § 304.5(a), and was handcuffed when moving outside his cell. *Id.* § 305.3. He could not work, eat meals outside his cell, and had limited access to music, reading materials, and television shows. *See id.* §§ 304.2(a), 304.11, 304.12; *Palmer*, 364 F.3d at 65 n.3. He could not "participate in programs to meet [his] program needs." ECF No. 1 at 9. Bailey alleges that on one occasion, his wife was prevented from entering the facility for a visit, though he did not know why. ECF No. 45-4 at 179-80; *Palmer*, 364 F.3d at 65 n.3 ("Visitors [are] permitted [for inmates in SHU], but the frequency and duration [is] less than in general population.").

To be sure, Bailey alleges other, more unusual conditions. He claims that one or more inmates "scream[ed] and yell[ed] all night." ECF No. 45-4 at 174, 194-95. Bailey claims that some inmates routinely threw feces or urine on other inmates, which caused officers to beat those inmates in retaliation, and which caused a stench of feces and urine in the public areas of the facility. *Id.* at 174, 178. Also, the inmates that handled meal distribution sometimes spit in inmates' food. *Id.* at 181. Bailey does not claim that he was subjected to any of these indignities, however. *Id.* at 175, 192-93.

These additional facts do not establish an atypical and significant hardship. In *Sealey v. Giltner*, 197 F.3d 578 (2d Cir. 1999), the Second Circuit held that an inmate's segregation in SHU for 101 days did not meet that standard, where the inmate was kept in his cell for 23 hours each day, was given one hour of recreation time daily, was limited to three showers per week, and lost "various privileges" during his segregation. *See Sealey*, 197 F.3d at 586-87. Like Bailey, the *Sealey* plaintiff also alleged that "[t]here was no quiet bell in the SHU, so it was noisy most of the time." *Id.* at 581. And not only did inmates occasionally throw feces at one another, but the *Sealey* plaintiff had been hit by feces "a few times."[5] *Id.* at 581, 587. Because the conditions that Bailey identifies are, at most, as severe as those in *Sealey*, and given that he was confined for substantially less time, Bailey has not demonstrated an atypical and significant hardship. *Accord Phillips v. LeCuyer*, No. 08-CV-878, 2013 WL 1024667, at *14 (N.D.N.Y. Feb. 19, 2013) ("The conditions

---

[5] Although Bailey alleges that there was a stench of urine and feces whenever he left his cell, *see* ECF No. 45-4 at 178, that fact is insufficient to render his conditions atypical—particularly given that he was confined to his cell 23 hours each day. *See Davis*, 576 F.3d at 134 (atypical conditions where plaintiff was confined to SHU for 55 days, plaintiff's mattress was "infected" with body waste, and cell was subject to "daily" flooding and "feces and urine thrown by other inmates"); *Jackson v. Prack*, No. 16-CV-7561, 2019 WL 6119010, at *7 (S.D.N.Y. Nov. 18, 2019) (atypical conditions where plaintiff was confined to SHU for 90 days, other inmates threw feces around him, and there was an "unbearable stench that affected [the plaintiff's] ability to eat").

6

which plaintiff alleged he experienced over the first 77 days of SHU confinement . . . were not more severe than 'normal' SHU conditions as defined by *Sealey*, and did not give rise to a protected liberty interest."); *Long v. Crowley*, No. 09-CV-456, 2012 WL 1202181, at *11 (W.D.N.Y. Mar. 22, 2012) ("Because Plaintiff's 60–days confinement in keeplock subjected Plaintiff to conditions that were no more severe than those to which the inmate in *Sealy* was subjected to for 101 days while in SHU, it logically follows that Plaintiff's confinement in keeplock, in this case, does not implicate a protected liberty interest." (emphasis added)).  Accordingly, because there is insufficient evidence that Plaintiff was subjected to atypical and significant hardship giving rise to a protected liberty interest, his due process claim against Coveny and Venettozzi fails. *See Sealey*, 197 F.3d at 583, 589-90.  Summary judgment is therefore appropriate.

## CONCLUSION

For the reasons discussed above, Defendants' partial motion for summary judgment (ECF No. 45) is GRANTED.  The procedural due process claim against Coveny and Venettozzi is dismissed, and the Clerk of Court is directed to terminate those defendants from the docket.  By separate order, the Court will schedule a status conference to hear from the parties on the progress of this action.

IT IS SO ORDERED.

Dated: November 2, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York